## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

**GLADYS MAE PERKINS**

           Debtor.              Case No.: 04-09275-8-JRL

**GLADYS MAE PERKINS,**

           Plaintiff,

vs.             Adversary Proceeding No.: 05-00085-8-AP

**SELECT PORTFOLIO SERVICING, INC.**
**f/k/a FAIRBANKS CAPITAL CORPORATION,**

           Defendant.

_____

### ORDER

This matter is before the court on the motion for partial summary judgment filed by the defendant, Select Portfolio Servicing, Inc. ("Select Portfolio"). On December 6, 2005, the court conducted a hearing on this matter in New Bern, North Carolina.

### UNDISPUTED FACTS

1.      The plaintiff, a resident of North Carolina, filed a Chapter 13 petition on December 1, 2004.

2.      The defendant, a corporation organized under the laws of Utah and authorized to do business in North Carolina, has filed a claim in the plaintiff's bankruptcy case.

3.      On January 13, 1998, the plaintiff executed a promissory note in favor of Chase Mortgage

        Brokers, Inc. in the amount of $74,250, secured by her residence and an adjacent lot located in Pollocksville, North Carolina.

4. The plaintiff was provided with a HUD-1 Settlement Statement in connection with the origination of the loan ( the "mortgage loan").

5. On January 13, 1998, Chase Mortgage Brokers assigned its interest in the mortgage loan to Emergent Mortgage Corporation.

6. On March 9, 1998, Emergent Mortgage assigned its interest in the mortgage loan to EquiCredit Corporation of America and subsequently, the loan was assigned to CF Mortgage Service Company.

7. On June 2, 2001, Fairbanks Capital Corporation ("Fairbanks Capital") purchased the servicing rights to the mortgage loan.

8. On June 30, 2004, Fairbanks Capital changed its name to Select Portfolio.

9. Fairbanks Capital was the subject of class action suits brought by the Federal Trade Commission alleging that the lender improperly serviced mortgage loans by assessing unauthorized late fees and other charges.

10. Fairbanks Capital entered into a settlement agreement in <u>Curry v. Fairbanks Capital Corp.</u>, Case No. 03-10895-DPW (D. Mass. 2005) (the "<u>Curry</u> settlement").

11. The plaintiff participated in the <u>Curry</u> settlement and received settlement proceeds.

## PROCEDURAL HISTORY

On April 30, 2005, the plaintiff filed a complaint against Select Portfolio to determine the validity or extent of its secured claim in her bankruptcy case. In Count 1, the plaintiff alleges that the mortgage loan constitutes a high cost loan under the Home Ownership and Equity Protection Act

("HOEPA"), 15 U.S.C. § 1602. As such, the original lender was required to provide the plaintiff with material disclosures that the plaintiff alleges she never received. Due to the original lender's failure to disclose and the nature of a HOEPA loan, the plaintiff asserts she is entitled to rescind the loan transaction. In Count 2, the plaintiff alleges that the mortgage loan contains usurious terms in violation of N.C.G.S. § 24-1. The defendant is allegedly subject to the claims and defenses that the plaintiff could assert against the originator of the loan because the mortgage loan falls under HOEPA.

In Count 3, the plaintiff alleges that the defendant violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601.[1] In Count 4, the plaintiff alleges that the imposition of fees prohibited by N.C.G.S. § 24-1 and the defendant's efforts to collect those fees are a violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1. In Count 5, the plaintiff alleges that the defendant was unjustly enriched through the imposition, collection, and receipt of unauthorized and improper fees. Under this common law doctrine, a plaintiff is entitled to recover all monies paid unjustly to a defendant.

On September 20, 2005, the defendant filed a motion for partial summary judgment. In its motion, the defendant asserts that the claims in Count 1 of the complaint are barred by the statute of limitations and further, the mortgage loan is not covered by the provisions of HOEPA. In addition, the defendant asserts the claims in Counts 2 and 4 are time barred and the claim for unjust enrichment is inappropriate as there is an express, written contract between the parties. Finally, the defendant asserts that any claim concerning the servicing of the loan arising from facts occurring before December 10, 2003 are barred because the plaintiff participated in the <u>Curry</u> settlement.

---

[1] The defendant is not moving for summary judgment on Count 3 so the court will not discuss this claim further.

The plaintiff's response to the defendant's motion argues that although ordinarily a claimant is prohibited from bringing an affirmative counterclaim if the statute of limitations has expired, the plaintiff is permitted to assert these claims as a recoupment defense to Select Portfolio's proof of claim. Thus, the claims in Counts 1, 2, and 4 survive the statute of limitations defense. The plaintiff also contends that the question of whether the mortgage loan is covered by the provisions of HOEPA is a question of fact, not law, to be determined by a trier of fact. As to the Curry settlement, the plaintiff admits that any claims based on the defendant's servicing of the loan before December 10, 2003 are barred but argues that the defendant continues to be liable for the origination of the mortgage loan and its actions after the settlement date.

## STANDARD OF REVIEW

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

I.  Count 1

The Truth in Lending Act ("TILA") is a federal statute that governs the terms and conditions of consumer loans, requiring lenders to make disclosures about loan fees and costs. See 15 U.S.C. § 1601 (2005). TILA was enacted to protect consumers from abusive practices in lending. See In re Cmty. Bank of N. Va. and Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig., 418 F.3d

277, 303-4 (3d. Cir. 2005). HOEPA, enacted as an amendment to TILA with respect to mortgage loans, "creates a special class of regulated loans that were made at higher interest rates or with excessive costs and fees." Id. at 304. If a loan falls into this "special class," the lender must provide the borrower with additional disclosures. If the lender's interest in the loan is assigned, the assignee cannot assert holder in due course defenses to claims brought by a consumer under TILA or other laws. See Short v. Wells Fargo Bank Minn., N.A., No. 3:04-1096, 2005 U.S. Dist. LEXIS 28612, at *16-17 (S.D.W. Va. November 18, 2005).

    A.    HOEPA

Under 15 U.S.C. § 1602(a)(a)(1), a mortgage secured by the borrower's principal dwelling is a HOEPA loan if "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities" or "the total points and fees payable by the consumer at or before closing will exceed the greater of 8 percent of the total loan amount or $400."[2] See also 15 U.S.C. § 1639 (2005).

The "total loan amount" is the amount financed, as determined by § 226.18(b), minus any cost that is included as points and fees under § 226.32(b)(1) and financed by the creditor. See 12 C.F.R. § 226.32(a)(1)(ii)-1, Supp. I. (2005). The amount financed is calculated by determining the principal loan amount and adding other amounts financed by the creditor that are not part of the finance charge and subtracting any prepaid finance charge. See 12 C.F.R. § 226.18(b). Points and fees are finance charges, including any charge payable by the consumer and imposed by the lender as "a condition of the extension of credit." 12 C.F.R. § 226.4(a). Fees paid to a third party that neither the lender nor an

---

[2] The plaintiff does not assert in her pleadings that the annual percentage rate on the mortgage loan exceeds the yield on Treasury securities by 10%.

affiliate receives in connection with the loan are not finance charges. Id.  All compensation paid to mortgage brokers is considered points and fees. See 12 C.F.R. § 226.32(b)(iv).

In this case, according to the plaintiff's HUD-1 Settlement Statement, the principal loan amount is $74,250. There are no listed prepaid finance charges or amounts financed by the creditor that are not included in the principal loan amount. The fees paid to Chase Mortgage Brokers in connection with the loan total $5,423.33, which includes an appraisal fee to Chase for Dozier, fees to Emergent Mortgage Corp., and a service premium release fee of 4% of the principal loan amount. If $5,423.33 is subtracted from $74,250, the "total loan amount" is $68,826.67. Eight percent of the total loan amount is $5,506.13. The total points and fees payable by the consumer at or before closing total $5,423.33, which is less than eight percent of the total loan amount.  Viewing all facts and all reasonable inferences in the light most favorable to the plaintiff, the mortgage loan is not covered by the provisions of HOEPA pursuant to 15 U.S.C. § 1602(a)(a)(1).

B.   Statute of Limitations Defense

Under 15 U.S.C. § 1635(f), a consumer's right of rescission under TILA expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section . . . have not been delivered to the obligor." An action for damages for a violation of TILA must be brought within one year from the date of the occurrence of the violation. See 15 U.S.C. § 1640(e) (2005). The plaintiff argues that she is entitled to assert a claim under § 1601 as a defense in recoupment to the defendant's proof of claim, despite the fact that it has been over three years since the loan closing.

Although § 1640(e) allows an individual to assert a violation of § 1601 "in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a

matter of defense of recoupment or set-off in such action," the individual may only recover damages. The plaintiff is barred by the statute of limitations from seeking equitable relief in the form of rescission pursuant to § 1635(f). See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 417-18 (1998); Jones v. Saxon Mortgage, Inc., No. 97-2215, 1998 U.S. App. LEXIS 22101 at *14-15 (4th Cir. September 9, 1998). Count 1 of the complaint, however, also seeks damages for violations of TILA and this claim is timely, pursuant to § 1640(e).[3]

II.     Counts 2 and 4

Under N.C.G.S. § 25-3-305(a)(3), a "claim in recoupment of the obligor against the original payee of the instrument" or the transferee of the instrument is permitted "if the claim arose from the transaction that gave rise to the instrument." The Official Comment to § 23-3-305(a)(3) states that this defense "can always be asserted" against an obligee. In Bull v. United States, the United States Supreme Court found that the defense of recoupment "is never barred by the statute of limitations so long as the main action itself is timely." [4] 295 U.S. 247, 262 (1935).

In this case, the timely proof of claim filed by Select Portfolio is the "main action." An action, as defined by N.C.G.S. § 25-1-201, includes suits in equity and "any other proceedings in which rights are determined." In filing a proof of claim, the defendant is asserting its "right" to be treated as a secured creditor in the bankruptcy case with a valid lien on the plaintiff's real property. The defendant's "right to enforce the obligation of a party to pay an instrument" is subject to the defense of recoupment.

---

[3] Any claims brought under TILA will be subject to holder in due course defenses because the mortgage loan is not a HOEPA loan.

[4] The statute of limitations bars both of these claims if asserted by the plaintiff independently. See N.C.G.S. §§ 1-53 and 75-16.2.

See N.C.G.S. § 25-3-305(a) (2005). The statute of limitations defense asserted in the defendant's motion for summary judgment does not defeat the claims asserted in Counts 2 and 4.[5]

III.    Count 5

The equitable doctrine of unjust enrichment implies a contract in the absence of an express contract between parties. See Paul L. Whitfield, P.A. v. Gilchrist, 348 N.C. 39, 42 (1998). The North Carolina Supreme Court has held that "an express contract precludes an implied contract with reference to the same matter." Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713 (1962). See also Bright v. QSP, Inc., 20 F.3d 1300, 1306 (4th Cir. 1994).

In this case, the parties have an express, written contract. The plaintiff has not challenged the existence of the contract and did not respond to the defendant's motion for summary judgment as to Count 5. The mortgage loan is governed by an existing contract and therefore, provides no basis for a claim for unjust enrichment.

## CONCLUSION

Based on the foregoing, the court finds that the mortgage loan is not covered by the provisions of HOEPA. Consequently, the defendant is able to assert holder in due course defenses against certain claims arising from the origination of the loan. Additionally, any claim concerning the servicing of the mortgage loan based on conduct occurring before December 10, 2003 is barred by the Curry settlement, although a claim arising from conduct after that date is permissible.

---

[5] The plaintiff contends that the defendant is subject to any state law claims that could be asserted against the original lender because the mortgage loan is a HOEPA loan. Although the court has found that the mortgage loan is not governed by HOEPA, the defendant would be able to assert holder in due course defenses against state law claims even if it was a HOEPA loan. See Dash v. Firstplus Home Loan Trust, 248 F. Supp. 2d 489, 501 n.13 (M.D.N.C. 2003) ("HOEPA does not create a new right or claim that would not otherwise be cognizable under the [state] law.").

Counts 2 and 4 of the plaintiff's complaint survive the defendant's statute of limitations defense. As to Count 1, the court finds the equitable remedy of rescission is barred by the statute of limitations but the claim for money damages survives the defendant's statute of limitations defense. As to Count 5, the court finds that there is no basis for the plaintiff's claim for unjust enrichment. Accordingly, the court grants the defendant's motion for summary judgment on Count 5 and part of Count 1. The court denies the defendant's motion as to Count 2, Count 4, and the claim for damages in Claim 1.

**So Ordered.**

**Dated: January 4, 2006**

J. Rich Leonard
United States Bankruptcy Judge